IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARL W. UKASIK,                      )
                                     )
              Plaintiff,             )
                                     )
         vs.                         ) Civil Action No. 08-285
                                     )
T. COLM McWILLIAMS, PATRICK          )
JOHN MELODY, ANN STEVENS,            )
BAR & RESTAURANT SERVICES,           )
LLC, CELTIC RESTAURANTS, LLC,        )
ERIE IRISH PUBS, LLC,                )
HARRISBURG IRISH PUBS, LLC,          )
MOLLY BRANNIGANS-ERIE, MOLLY         )
BRANNIGANS USA, LLC, MOLLY           )
BRANNIGANS-PITTSBURGH,               )
SQUIRREL HILL IRISH PUBS, LLC,       )
SUMMERLIN IRISH PUBS, LLC,           )
MOLLY BRANNIGANS MANAGEMENT          )
ARIZONA, LLC, DON BRODIE             )
DEVELOPMENT, ANA PARK IRISH          )
PUBS and JOHN DOES 1-100,            )
entities of unknown nature           )
and capacity,                        )
                                     )
              Defendants.            )

**MEMORANDUM**

## I. INTRODUCTION

In his second amended complaint, Plaintiff, Carl W. Ukasik,

asserts claims against Defendants, T. Colm McWilliams

("McWilliams"), Patrick John Melody ("Melody"), Ann Stevens

("Stevens"), Bar & Restaurant Services, LLC, Celtic Restaurants,

LLC, Erie Irish Pubs, LLC, Harrisburg Irish Pubs, LLC, Molly

Brannigans-Erie, Molly Brannigans USA, LLC, Molly Brannigans-

Pittsburgh, Squirrel Hill Irish Pubs, LLC, Summerlin Irish Pubs,

LLC, Molly Brannigans Management Arizona, LLC, Don Brodie

Development and Ana Park Irish Pubs, for violations of the
Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18
U.S.C. §§ 1961-1968 (Count 1), fraud and misrepresentation (Count
2), conspiracy (Count 3), breach of contract (Count 4), unjust
enrichment (Count 5), negligence (Count 6), gross negligence
(Count 7), willful misconduct (Count 8) and conversion (Count 9).
Plaintiff's claims against Defendants arise out of his failure to
be paid for electrical services provided in 2004 and 2005 in
connection with the expansion of a restaurant chain to Allegheny
County, Pennsylvania.

Defendants have moved for the dismissal of Plaintiff's
second amended complaint, as well as his second amended RICO case
statement. For reasons which follow, the motion to dismiss
Plaintiff's second amended complaint will be granted with respect
to the RICO claim and his remaining state law claims will be
transferred to state court.[1]

## II. BACKGROUND

Plaintiff initiated this civil action on October 17, 2008 by
filing a motion for leave to proceed in forma pauperis (Document
No. 1), and the case was assigned to the Honorable Sean J.
McLaughlin of the Erie Division of this Court. When Judge

---

[1]In light of the dismissal of Plaintiff's RICO claim and the
transfer of his remaining claims to State court, Defendants'
motion to dismiss Plaintiff's second amended RICO case statement
will be denied as moot.

McLaughlin entered an Order of recusal on October 20, 2008, the case was re-assigned to the Honorable Maurice B. Cohill, Jr. in the Court's Erie Division.  Judge Cohill granted Plaintiff's motion for leave to proceed in forma pauperis, and a complaint was filed on October 23, 2008.  (Document Nos. 2, 3 and 4).

In his original complaint, which named 12 individuals, 12 entities and 1-100 John Does as Defendants, Plaintiff asserted claims for violations of RICO (Count 1), breach of contract (Count 2), bad faith breach of contract (Count 3), unjust enrichment (Count 4), negligence and gross negligence (Counts 5 and 6), willful misconduct (Count 7), conversion (Count 8), fraud and misrepresentation (Count 9), conspiracy (Count 10), and intentional and negligent infliction of emotional distress (Counts 11 and 12).

On April 13, 2009, the 4 remaining individual Defendants and the entity Defendants filed a motion to dismiss Plaintiff's original complaint on the following grounds:[2] (1) the complaint violated Fed.R.Civ.P. 8(a)(2) which requires a short and plain statement of the claim showing that the pleader is entitled to relief; (2) the complaint violated Fed.R.Civ.P. 8(d)(1) which requires each allegation to be simple, concise and direct; (3)

---

[2]Between March 9, 2009 and April 1, 2009, Plaintiff voluntarily dismissed his claims against 8 of the individual Defendants.  (Document Nos. 22 and 28).  Thus, 4 individual Defendants remained at the time the motion to dismiss Plaintiff's original complaint was filed.

the complaint violated Fed.R.Civ.P. 12(f) and, therefore, should be stricken because it was "replete with verbose allegations and irrelevant, impertinent, scandalous and redundant material"; (4) the RICO claim should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted;[3] (5) in light of Plaintiff's failure to state a RICO claim, his remaining state law claims should be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because the case does not satisfy the requirements for diversity jurisdiction; (6) the claim for "bad faith breach of contract" should be dismissed because Pennsylvania law prohibits the recovery of punitive damages for breach of contract; and (7) the tort claims should be dismissed under the "gist of the action" doctrine.  (Document Nos. 31 and 34).

On April 14, 2009, Judge Cohill signed an Order directing Plaintiff to file a RICO case statement within 20 days which would be treated as an amended complaint; directing Defendants to file a responsive pleading within 20 days thereafter; indicating that Defendants' pending motion to dismiss would be denied without prejudice as moot upon Plaintiff's filing of a RICO case

---

[3]With respect to Plaintiff's RICO claim, Defendants asserted that Plaintiff failed to plead all of the elements of any of the four prohibited activities set forth in 18 U.S.C. § 1962(a)-(d), including, inter alia, racketeering activity as defined in 18 U.S.C. § 1961(1) and a pattern of racketeering activity. (Document No. 34, pp. 7-9).

statement; and setting forth in detail the format for the RICO case statement.   (Document No. 36).   Shortly thereafter, Judge Cohill signed an Order of recusal and the case was re-assigned to this member of the Court.   (Document No. 37).

Plaintiff filed a RICO case statement on May 2, 2009. (Document No. 38).   Two days later, Defendants' motion to dismiss Plaintiff's original complaint was denied without prejudice as moot in accordance with Judge Cohill's April 14th Order.   On May 22, 2009, Defendants filed a motion to dismiss Plaintiff's RICO case statement for failure to state a claim under Fed.R.Civ.P. 12(b)(6).[4]   In the alternative, Defendants argued that Plaintiff's RICO case statement failed to comply with Fed.R.Civ.P. 9(b) which requires fraud claims to be pled with particularity.   (Document Nos. 39 and 40).

By Order dated May 22, 2009, Plaintiff was directed to file a brief in opposition to Defendants' motion to dismiss his RICO case statement by June 5, 2009.   On June 3, 2009, Plaintiff, without leave of Court, filed a first amended complaint and a first amended RICO case statement, as well as a motion for continuance pending a motion for sanctions.   (Document Nos. 41,

---

[4]In seeking the dismissal of Plaintiff's RICO case statement, Defendants raised the same argument that they had raised in their motion to dismiss the RICO claim in Plaintiff's original complaint, *i.e.*, Plaintiff failed to plead the necessary elements of any of the four activities prohibited by RICO. (Document No. 39, p. 3).

42 and 43).  With respect to the motion for continuance,
Plaintiff sought an extension of time to file a brief in
opposition to Defendants' motion to dismiss his RICO case
statement to enable him to pursue sanctions against Defendants
because their motion to dismiss was "dilatory, improper,
harassing, oppressive, malicious, and in reckless disregard of
the rights of Plaintiff."  (Document No. 43, p. 1).

By Order dated June 4, 2009, Plaintiff's motion for
continuance was denied; Defendants were directed to file a
supplemental brief in support of their motion to dismiss
Plaintiff's RICO case statement to address Plaintiff's first
amended complaint and first amended RICO case statement by June
18, 2009; and Plaintiff was directed to file a brief in
opposition by July 2, 2009.  (Document No. 45).

On July 2, 2009, Plaintiff filed an opposition and brief in
opposition to Defendants' motion to dismiss his RICO case
statement.  (Document Nos. 49 and 50).  Plaintiff also filed a
notice of voluntary dismissal as to one of the four remaining
individual Defendants (Document No. 51), as well as a second
amended complaint and a second amended RICO case statement
without leave of Court.[5]  (Document Nos. 47 and 48).

---

[5]In his second amended complaint, Plaintiff omitted his
earlier claims against Defendants for bad faith breach of
contract and intentional and negligent infliction of emotional
distress.  (Document No. 47).

On July 22, 2009, Defendants filed motions to dismiss the second amended complaint and second amended RICO case statement with supporting briefs.  (Document Nos. 52, 53, 54 and 55).  In response, on July 31, 2009, Plaintiff filed a motion to schedule a status conference asserting that "absent aggressive judicial intervention in the near future, Plaintiff and Plaintiff (sic) counsel fear that the current unproductive cycle will endure much too long."  Plaintiff's counsel concluded the motion as follows: "WHEREFOR Plaintiff respectfully moves that the honorable Court hold at its earliest convenience a status conference ... to narrow the issues in dispute and to give direction to counsel toward resolving pleading issues and moving the action forward." (Document No. 56).

On August 13, 2009, the Court filed a Memorandum and Order denying Defendants' motion to dismiss Plaintiff's original RICO case statement as moot in light of the filing of the second amended RICO case statement and Defendants' pending motion to dismiss that statement.  The Court also denied Plaintiff's motion to schedule a status conference noting that (1) the issues raised by Defendants' motions to dismiss the second amended complaint and second amended RICO case statement were sufficiently narrow for Plaintiff to file responses thereto and (2) it was not the task of the Court or opposing counsel to assist Plaintiff in pleading his claims.  Finally, Plaintiff was given the

7

opportunity to file a supplemental brief in opposition to the
pending motions to dismiss which he did on August 27, 2009.
(Document Nos. 58, 59, 60 and 61).

## III. FACTUAL ALLEGATIONS

In summary, Plaintiff's second amended complaint alleges the
following facts:[6]

Plaintiff is a resident of Erie, Pennsylvania.  The
individual Defendants, McWilliams, Melody and Stevens, reside in
Erie, Pennsylvania and conduct business in various parts of
Pennsylvania, including Allegheny County.  Eight of the entity
Defendants are Pennsylvania limited liability companies with
registered addresses in Erie, Pennsylvania.[7]  The remaining four
entity Defendants are "ostensible business entities of unknown
nature and capacity."[8]  All of the entity Defendants conduct
business in Pennsylvania, including the Western District of

---

[6]Plaintiff's 24-page second amended complaint consists of
124 paragraphs.  In addition, three exhibits totaling 134 pages
are attached.  Thus, a brief summarization is not possible.

[7]These Defendants are Bar & Restaurant Services, LLC, Celtic
Restaurants, LLC, Erie Irish Pubs, LLC, Harrisburg Irish Pubs,
LLC, Molly Brannigans USA, LLC, Squirrel Hill Irish Pubs, LLC,
Summerlin Irish Pubs, LLC and Molly Brannigans Management
Arizona, LLC.

[8]These Defendants are Molly Brannigans-Erie, Molly
Brannigans-Pittsburgh, Don Brodie Development and Ana Park Irish
Pubs (identified as Dana Park Irish Pubs at times).

Pennsylvania,[9] and, at all relevant times, Defendants engaged in interstate and foreign commerce.

On April 1, 2001, McWilliams, Melody and other unidentified individuals began to form a group of entities to operate a bar near Mercyhurst College.[10]  Plaintiff was hired to perform the electrical work on the bar.  Defendants fell behind in payments to Plaintiff for his services, but eventually he was paid in full.

Subsequently, McWilliams, Melody and possibly others decided to start a chain of restaurants under the trade name "Molly Brannigans," a mythical figure in Irish culture.  The first location chosen for a Molly Brannigans restaurant was Erie, Pennsylvania, and Plaintiff was asked to perform the electrical work for the restaurant.  Again, Defendants fell behind in payments to Plaintiff for his services.  Eventually, however, Plaintiff was paid in full.  The restaurant opened in 2002.

The next location chosen by the individual Defendants and possibly others for a Molly Brannigans restaurant was Harrisburg,

---

[9]In his second amended complaint, Plaintiff alleges that venue is proper in this district because the "vast majority" of transactions and occurrences giving rise to this action occurred in Allegheny County and the real property that is the subject of this action is located in Allegheny County.  (Document No. 47, ¶ 13).

[10]According to the second amended complaint, McWilliams and Melody are natives of Ireland who attended Mercyhurst College, which is located in Erie, Pennsylvania, on soccer scholarships. (Document No. 47, ¶¶ 14-15).

Pennsylvania, and Plaintiff was hired to perform the electrical work for the restaurant.  Again, Defendants fell behind in payments to Plaintiff for his services.  However, he eventually was paid in full.  The restaurant opened in 2003.

In January 2004, Plaintiff filed a Chapter 11 bankruptcy petition due to financial problems that began in 2001.  At all relevant times, the individual Defendants knew of Plaintiff's financial difficulties and "potential great vulnerability to any added problems."[11]

Beginning in 2004, Melody and possibly others began making public statements about expanding the Molly Brannigans chain of restaurants "to upwards of 50 locations nationwide."  To finance the expansion, McWilliams, Melody and possibly others "devised an enterprise" to raise money from McWillams' former investment clients based on their presumptive trust in him.[12]  McWilliams, Melody and possibly others established multi-level insider

---

[11]Plaintiff alleges that despite repeated defaults in payment by McWilliams, Melody and other individual Defendants, he formed "friendly relationships" with them.  In fact, in January 2002, Plaintiff permitted McWilliams, Melody and other individual Defendants and related business entities to share office space with him in exchange for their payment of utility bills and other expenses.  Plaintiff alleges that the individual Defendants were aware of his financial difficulties as a result of sharing office space with him.  (Document No. 47, ¶¶ 26-27, 43).

[12]According to the second amended complaint, McWilliams worked as a stockbroker for a period of time after graduating from Mercyhurst College.  (Document No. 47, ¶¶ 14-15).

activity within the enterprise to avoid the need to invest their own money in any of the new restaurants.

In July 2004, in furtherance of the expansion plan for Molly Brannigans restaurants, the individual Defendants and possibly others undertook efforts to acquire a parcel of real property located at 660 Washington Road in Mt. Lebanon, Allegheny County, Pennsylvania and "attempt to retrofit" the building (an abandoned automobile dealership that had been vacant for over 20 years) for a Molly Brannigans restaurant with associated retail and office space.[13]  At that time, the individual Defendants and possibly others formed 2 entities - Pittsburgh Irish Pubs, LLC ("PIP"), a dummy shell entity which would take title to the real property, and Defendant Bar & Restaurant Services, LLC ("B&R Services"), an entity which would operate the restaurant.[14]  The individual

---

[13]As part of the expansion plan for Molly Brannigans restaurants, Plaintiff also alleges that the individual Defendants and possibly others undertook efforts in July 2004 to open restaurants in Scranton-Wilkes Barre, Pennsylvania, Las Vegas, Nevada and Arizona.  (Document No. 47, ¶ 34).

[14]Plaintiff alleges that McWilliams, Melody and possibly others centered the "enterprise" around B&R Services, a management company in which only they, and not any of the investors, would have a financial interest.  B&R Services would have contracts with each investor-funded entity pursuant to which it would receive "ostensible" management fees.  Revenue would be taken by the insider members of the enterprise before any revenue would be distributed to the legitimate operating companies and the investors in those companies.  Plaintiff further alleges that at some point after the formation of B&R Services, Defendant Stevens and possibly others became insiders.  (Document No. 47, ¶¶ 19-20).

11

Defendants and possibly others then undertook a "unified fund raising" effort without "any real difference between the 2 entities" which were "only separated ... by making a proportionate accounting journal entry."

In September 2004, PIP closed on the building located at 660 Washington Road in Mt. Lebanon.[15]  At the time, the individual Defendants and possibly others knew that they had not raised, and likely could not raise, enough money to complete the Allegheny County project.  Specifically, the individual Defendants and possibly others estimated the total cost of acquiring the real property and refurbishing the building to open a Molly Brannigans restaurant and lease retail and office space at $2.5 million.  However, the individual Defendants had raised only $1 million in investor capital and had a verbal loan commitment for $1.1 million, leaving a deficit of $400,000.  Despite the deficit, the individual Defendants and others decided to continue with the Allegheny County project and deal with the deficit later.

In November 2004, McWilliams, Melody and other individual Defendants contacted Plaintiff to perform the electrical work for the Allegheny County project.[16]  Due to his serious financial

---

[15]Plaintiff alleges that prior to this undertaking, none of the Defendants had ever purchased real property for the purpose of operating a business.  All of their other businesses had been opened in leased premises. (Document No. 47, ¶ 30).

[16]With respect to Plaintiff's allegation against McWilliams, Melody and "other individual Defendants," only one other

problems and failure to be paid in a timely manner by Defendants

for electrical work on prior projects, Plaintiff "pointedly"

asked McWilliams and other individual Defendants if they had

sufficient funds to complete the project and make timely payments

to contractors.   If not, Plaintiff stated that he would not work

on the project.   Notwithstanding "manifest contrary facts" and

their knowledge of Plaintiff's precarious financial situation,

McWilliams, Melody and other individual Defendants falsely told

Plaintiff that they had, in fact, raised sufficient funds to

complete the project and that Plaintiff would be paid for his

services in a timely manner.[17]   Based on these assurances,

Plaintiff agreed to begin work on the Allegheny County project

without a written contract on a cost plus 10% basis without the

need to submit written change orders for approval.[18]

---

individual Defendant, Ann Stevens, remains.   Nevertheless,
throughout his second amended complaint, Plaintiff continues to
refer to McWilliams, Melody and "other individual Defendants."

[17]Plaintiff also alleges that, between September 2004 and
November 2004, he believes the individual Defendants and possibly
others gave similar assurances to an individual named Devoy, who
came to Erie, Pennsylvania with McWilliams and Melody to play
soccer and who owned a company called ARA Construction, to induce
Devoy to begin work on the Molly Brannigans restaurants to be
opened in Allegheny County, Pennsylvania and Arizona.   Plaintiff
further alleges that he believes the individual Defendants and
possibly others decided to engage contractors who trusted them,
including himself and Devoy, because they knew of the financial
shortfalls in their expansion plan for Molly Brannigans
restaurants.   (Document No. 47, ¶¶ 41, 47).

[18]Plaintiff alleges that the individual Defendants
"desperately" needed the electrical work on the Allegheny County

13

By March 2005, the enterprise had completed enough of the
construction on the Allegheny County project to obtain
certificates of occupancy for the Molly Brannigans restaurant and
a medical office tenant, and a stream of revenue began to flow
through B&R Services.  However, the enterprise ran out of money
on the Allegheny County project due, in large part, to the
failure of the anticipated bank loan to close.  As a result of
non-payment, Plaintiff, ARA Construction and other contractors
stopped working on the Allegheny County project at various times.

In July 2005, the enterprise closed on the bank loan and
made partial payments to the contractors on the Allegheny County
project.  On August 1, 2005, ARA Construction threatened to file
a mechanic's lien due to non-payment.  Two weeks later, Bernardo
Katz, a prospective buyer, withdrew his offer to purchase the
building.

On September 1, 2005, Plaintiff made a demand for payment on
the Allegheny County project, threatening to file a mechanic's
lien if he was not paid.  In response, McWilliams, Melody and
other individual Defendants informed Plaintiff that the
enterprise had a buyer for the building and that Plaintiff would
be paid shortly after the closing of the sale.  They asked
Plaintiff not to file a mechanic's lien in anticipation of

---

project to commence in the Fall of 2004 because of the necessity
of underground electrical work without which the project could
not continue into the winter.  (Document No. 47, ¶ 49).

payment in the near future, failing to disclose the potential
buyer's withdrawal of his offer to purchase the building or the
threat of ARA Construction to file a mechanic's lien.[19]

Due to the failure of the enterprise to pay Plaintiff for
his services on the Allegheny County project, he had insufficient
funds to enter into a settlement agreement with the Internal
Revenue Service ("IRS") following the dismissal of his bankruptcy
petition in June 2005.  As a result of IRS notices of intent to
levy on his bank accounts, Plaintiff was compelled to file
another bankruptcy petition in October 2005.  On September 4,
2005, prior to the filing of Plaintiff's second bankruptcy
petition, McWilliams, Melody and other individual and entity
Defendants caused PIP to file a Chapter 11 bankruptcy petition.
In a schedule filed in its bankruptcy case, PIP listed nine
insider entities as ostensible creditors.

With regard to the expansion of the Molly Brannigans chain
of restaurants to Allegheny County, Pennsylvania, Plaintiff
believes that the individual Defendants and possibly others were
determined to generate an additional stream of revenue for
themselves notwithstanding "obvious problems" on "future"
business operations which included the following: (a) PIP's lease

---

[19]According to the second amended complaint, on September 9,
2005, ARA Construction did, in fact, file a mechanic's lien as
threatened, which had priority over Plaintiff's subsequently
filed mechanic's lien.  (Document No. 47, ¶¶ 65-67).

of the restaurant to B&R Services for a 50-year term at
approximately 50% of the then current market value of the leased
premises; (b) the failure of the lease between PIP and B&R
Services to include a provision for periodic rent increases based
on increases in market value or increases in carrying costs such
as property tax increases; (c) the lack of sufficient parking for
customers in the Mt. Lebanon business district and the close
proximity of three commercial developments with abundant, free
customer parking; (d) the previous failure of several large
businesses in the Mt. Lebanon business district; (e) the "obvious
red flag" that no other developer had sought to acquire the real
property located at 660 Washington Road in Mt. Lebanon for 20
years; (f) the failure to conduct a sufficient study of the real
property to discover persistent and possibly irreparable problems
with the building's foundation and roof; (g) the creation of a
restaurant space that was too large to be suitable financially
for any successor restaurant; (h) ignoring the deleterious impact
of running out of funds, which would result in unfinished lease
space, on the chances of any ostensible legitimate business
enterprise's success; and (i) the failure to seek real estate
business advice and development facts prior to purchasing the

16

real property which the broker who eventually obtained the listing to sell the property stated was readily available.[20]

As a direct and proximate result of Defendants' improper actions, Plaintiff has suffered damages in the amount of approximately $120,000, representing unpaid compensation under his oral agreement with McWilliams and Melody to provide electrical services for the Allegheny County project, interest and fees and expenses relating to Plaintiff's inability to pay his material suppliers, the costs incurred by Plaintiff to file and maintain a bankruptcy case and the diminished ability of Plaintiff to obtain financing and credit for his business.

Plaintiff believes that the "Allegheny County disaster" constituted only one phase of a pattern of improper actions by the enterprise which included: (a) the inducement of ARA Construction to perform leasehold improvements on the Molly Brannigans restaurant to be opened in Arizona at a cost exceeding $615,000, while only making payments to the company in the amount of $100,000; (b) the failure to pay contractors after inducing them to perform leasehold improvements between 2004 and 2006 on the Molly Brannigans restaurant to be opened in Scranton-Wilkes

_____

[20]The Court notes that many of the items cited by Plaintiff as "obvious future problems" are not properly characterized as such.  Rather, they are matters relating to the business judgment and acumen of those individuals responsible for the decision to purchase the building at 660 Washington Road in Mt. Lebanon for the purpose of opening a Molly Brannigans restaurant and leasing retail and office space.

Barre, Pennsylvania; and (c) engaging in similar conduct during
the attempted expansion of the Molly Brannigans chain of
restaurants to Las Vegas, Nevada and Cleveland, Ohio.

From July 1, 2004 to the present and continuing into the
future, the enterprise and the individual and business entity
Defendants and possibly others, through schemes and artifices to
defraud, skimmed the gross sales of the business entities through
B&R Services, together with salaries, profits and other amounts,
while refusing to pay Plaintiff and the other contractors who
performed services on the restaurant projects which had allowed
Defendants to begin and continue to collect revenue.[21]

## IV. STANDARD OF REVIEW

When presented with a motion to dismiss under Fed.R.Civ.P.
12(b)(6), the Court must accept the allegations in the complaint
as true, read those allegations in the light most favorable to
the plaintiff, and determine whether a reasonable reading of the

---

[21]The second amended complaint also alleges that on October
16, 2007, the creditors in PIP's bankruptcy case deposed
McWilliams whose testimony during the debtor's exam "indicated
and suggested numerous financial irregularities and replete
insider activity," including (a) an ostensible lack of memory as
to which entities remained in existence; (b) an ostensible lack
of memory as to the disposition of investor money; (c) an
admission that he made his living by skimming revenue into B&R
Services from the investor funded entities; (d) an admission that
he did not provide notice to investors when he transferred funds
from one entity to another; and (e) an admission that he depleted
PIP of cash while amassing profits in excess of $100,000
elsewhere.

allegations indicates that relief may be warranted.  Umland v. PLANCO Financial Service, Inc., 542 F.3d 59, 64 (3d Cir.2008).

## V. LEGAL ANALYSIS

RICO provides a civil remedy for "[a]ny person injured in his business or property by reason of a violation of Section 1962 of this chapter."[22]  18 U.S.C. § 1964(c).  In turn, Section 1962 prohibits four types of activities.  Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that income to acquire, establish or operate any enterprise which is engaged in interstate or foreign commerce.[23]  Section 1962(b) prohibits "any person through a pattern of racketeering activity" from acquiring or maintaining any interest in or control of any enterprise engaged in interstate or foreign commerce.  Section 1962(c) prohibits any person employed by or associated with any enterprise engaged in interstate or foreign commerce from conducting or participating in the conduct of the enterprise's affairs "through a pattern of racketeering activity."  Finally,

---

[22]A successful plaintiff in a civil RICO action may recover treble damages and the cost of the suit, including a reasonable attorney's fee.  18 U.S.C. § 1964(c).

[23]Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

Section 1962(d) prohibits any person from conspiring to violate any of the provisions of subsections (a), (b) or (c).[24]

Case law has established separate requirements for certain subsections of Section 1962.[25]   See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir.1991).   However, all subsections of Section 1962 require a "pattern of racketeering activity."   No defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern.[26]   Banks v. Wolk, 918 F.2d 418, 421 (3d Cir.1990).

---

[24]In the present case, Plaintiff asserts that Defendants violated all four subsections of Section 1962.   (Document No. 48, ¶ 1).

[25]For example, in Kehr, the Third Circuit noted that under Section 1962(a), a plaintiff must allege injury specifically from a defendant's use or investment of income from racketeering activity in the named enterprise and, under Section 1962(b), a plaintiff must allege a specific nexus between control of a named enterprise and the alleged racketeering activity.   However, Section 1962(c) is not subject to these nexus limitations. Moreover, while an entity can be both an enterprise and a defendant for purposes of Section 1962(a), such a dual role is impermissible in actions based on Section 1962(c).   See 926 F.2d at 1411.

[26]As noted in footnote 24, Plaintiff alleges that Defendants violated all four subsections of Section 1962.   However, contrary to the format for a RICO case statement set forth in Judge Cohill's Order dated April 14, 2009, the Court notes that none of the RICO case statements filed by Plaintiff "[d]escribe in detail the pattern of racketeering activity ... alleged for **each** RICO claim." (Emphasis added).   (Document No. 36, p. 2).   In fact, Plaintiff's RICO case statements fail to follow the format provided by Judge Cohill in numerous respects.

Section 1961(1) sets forth a list of the predicate offenses that constitute "racketeering activity" under RICO. The list, which is exhaustive, may be divided into two broad categories. The first category includes acts or threats involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in a controlled substance that are chargeable under State law and punishable by imprisonment for more than one year, while the second category includes acts that are indictable under specific federal statutes.

In his second amended RICO case statement, Plaintiff identifies three predicate offenses in support of his RICO claim. (Document No. 48, ¶ 4). The first alleged predicate offense identified by Plaintiff is "18 USC §§ 1962(a-d)," which, as noted previously, is the section of RICO that describes the four types of activities prohibited by the statute. Section 1962, however, is not included among the indictable federal offenses listed in Section 1961(1). Therefore, it is not a predicate offense for purposes of RICO.

The second and third predicate offenses identified by Plaintiff in his second amended RICO case statement are "18 Pa CSA § 4111," a Pennsylvania statute prohibiting a person from defrauding creditors in connection with insolvency proceedings, and "ARS § 44-1211," an Arizona statute making it a criminal offense to engage in a fraudulent conveyance or other transaction

21

with the intent to defraud creditors.  Fraud, however, is not
included among the types of offenses chargeable under State law
that are listed in 1961(1) as predicate offenses.  Therefore,
Plaintiff also erred in citing these State statutes as predicate
offenses in support of his RICO claim.

In sum, Plaintiff has failed to cite any predicate offenses
listed in Section 1961(1) to support his RICO claim against
Defendants, and this failure mandates the dismissal of his RICO
claim under Fed.R.Civ.P. 12(b)(6).[27]  Moreover, because Plaintiff
has been permitted to file three complaints and three RICO case
statements in an attempt to state a RICO claim but has failed to
do so, leave to file a further amended complaint or a further
amended RICO case statement will be denied.

## VI.  CONCLUSION

Because this case no longer involves a federal question and
diversity jurisdiction is lacking, the Court declines to exercise

---

[27]As noted previously, Defendants raised several arguments
in support of their motion to dismiss Plaintiff's RICO claim and
second amended RICO case statement.  In light of Plaintiff's
failure to plead any recognized predicate offense, the Court will
not address these additional arguments.

supplemental jurisdiction over Plaintiff's remaining State law
claims and those claims will be transferred to State court.

William L. Standish
United States District Judge

Date: October 29, 2009